**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 22-CR-208 (JEB)** |
| **KASH LEE KELLY,** | |
| **Defendant** | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Kash Lee Kelly to six months' incarceration consecutive to any sentence Kelly is serving, 60 hours of community service, and $500 in restitution.

**I.    Introduction**

The defendant, Kash Lee Kelly, participated in the January 6, 2021, attack on the United States Capitol - a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred law enforcement officers, and resulted in more than two million dollars' worth of property damage.

Kelly will plead guilty on November 10, 2022, and he will be sentenced on the same day, to one count of violating 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building. As explained herein, a substantial jail sentence is appropriate in this case because Kelly: (1) was aware that he was violating the terms of his pre-sentence release conditions in his federal court prosecution in Indiana when he came to Washington on January 6; (2) was aware that

1

he committed another federal offense while on release by his unlawful actions at the Capitol on January 6; (3) laughed and cheered while standing on a statue inside the Capitol building; (4) posted live video on social media while he was outside the Capitol building; (5) actively spread propaganda on social media by falsely downplaying the violence and unlawful activities inside the Capitol on January 6; and (6) made social media statements revealing he believed that his actions were to let "traitors" inside the Capitol know that he and the other rioters were not playing games and that he was "proud" of his actions and the other rioters' actions.

Although Kelly did not personally engage in violence or property destruction, he encouraged and celebrated his actions and the other rioters' unlawful actions that day. He wrote on his Facebook account that, "The day we let the Traitors who constantly push the divide in OUR country know that we are done playing their games. All ppl of all colors came together today and I couldn't be more proud to be an AMERICAN."

In addition, after leaving the Capitol on January 6, Kelly gave a video interview to a social media website titled, "Storming the Capitol - Street Interviews." In that interview, Kelly doubled-down on his criminal conduct that day by stating,

> We feel like our voices weren't being heard which is why we ran through that Capitol Building.  To let them know this is our house, and we were united, black, brown, red, yellow, didn't matter . . . white, everybody stood together, we ran through that building, and let them know this is our house, this is our country, and that's our President. And we are not going to let them fuck with us, man, fuck with our liberty and our freedoms, we're going to keep doing what we are doing.

Importantly, this Court must also consider that Kelly's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm law enforcement, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, Kelly's participation in a riot that actually succeeded in halting the Congressional certification combined

2

with his celebration and endorsement of the violence and disruption of the Congressional certification process on that day and the potential for future disruptions of our democratic process while on pre-sentence release status for another federal criminal offense renders a significant jail sentence both necessary and appropriate in this case.

## II.        Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol outlined in the accompanying Statement of Offense.

*Kelly's Role in the January 6, 2021 Attack on the Capitol*

Kelly came with others to Washington, D.C. from Indiana on or about January 5 to attend the "Stop the Steal" rally. At that time, he was on release status as one of thirty-eight defendants in a federal prosecution for drug-trafficking in the Northern District of Indiana, *United States v. Anton James, et al,* N.D. Ind. 2:15-cr-00072-37.

On January 6, Kelly attended the "Stop the Steal" rally and then marched to the U.S. Capitol. Significantly, before entering the Capitol, Kelly stood on a railing at the Capitol waving an American flag on the grounds of the Capitol encouraging other rioters to unlawfully enter the building and grounds of the Capitol and to further participate in the Capitol riot. *See* Images 1 and 2, below.



**Image 1**



**Image 2**

Subsequently, Kelly illegally and without permission walked inside the U.S. Capitol at the Senate Wing Doors at approximately 2:24 p.m. – *see* Image 3 below. The U.S. Capitol was first breached at this location by a rioter who jumped through the window over broken glass at approximately 2:13 p.m.



**Image 3**

After entering the Capitol, Kelly turned to the right and walked from there traveled through to the Crypt – *see* Image 4 below.



**Image 4**

Kelly then is seen walking up to and then standing on a statue at the Capitol located at the Crypt North – *see* Images 5 through 6, below.



**Image 5**



**Image 6**

After standing on the statue and while still inside the Capitol, Kelly then is seen walking around and taking photos of himself and other rioters – see Images 7 through 8, below.



**Image 7**



**Image 8**

After taking photos of himself and other rioters, Kelly left the inside of the Capitol through the Senate Wing doors – *see* Images 9 and 10, below.



**Image 9**



**Image 10**

In total, Kelly spent nearly seven minutes inside of the Capitol. Kelly has admitted that he knew at the time he entered the U.S. Capitol Building that he did not have permission to do so, and he engaged in disorderly and disruptive conduct in the Capitol Building with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress.

*Social Media Posts*

After the attack and Kelly's unlawful entry into the Capitol, Kelly used Facebook to spread false propaganda, showing a photo of himself standing on a statue in the Crypt North side of the Capitol, to state: "The day we let the Traitors who constantly push the divide in OUR country know that we are done playing their games. All ppl of all colors came together today, and I couldn't be more proud to be an AMERICAN."  See Image 11, below.



**Image 11**

In addition, on January 6, after leaving the Capitol, Kelly gave a video interview to a social media website titled, "Storming the Capitol - Street Interviews." In that interview, Kelly gleefully stated that, "We feel like our voices weren't being heard which is why we ran through that Capitol Building. To let them know this is our house, and we were united, black, brown, red, yellow, didn't

matter . . . white, everybody stood together, we ran through that building, and let them know this is our house, this is our country, and that's our President. And we are not going to let them fuck with us, man, fuck with our liberty and our freedoms, we're going to keep doing what we are doing." A still image from that video is shown below – *see* Image 12, below.[1]



**Image 12**

---

[1] January 6th Storming The Capitol - Street Interviews available at https://youtu.be/sLa98fB0Elw?t=247 (4:07 to 4:29).

### C.        Kelly's Post-Mirandized Statement to the FBI

After his arrest on January 22, 2021, Kelly gave an interview to the FBI in which he admitted, *inter alia*, that he and some of his friends attended the "Stop The Steal" rally and that he, along with others, walked to the Capitol after the rally. Once at the Capitol, Kelly cut to the front of the large crowd that was already present. He was on the scaffolding side of the building, outside the fence near the stairs. Kelly admitted that he was broadcasting on Facebook Live and the crowd was chanting "USA." Kelly stated that within a minute of being at the Capitol, Capitol Police started shooting gas rounds at the crowd and throwing flash bangs. Kelly was struck on the leg with a launched gas round. Kelly recalled that he was very upset and angry at the police for allegedly attacking the crowd for no reason, especially since he did not see any reason for the response and there were children in the crowd.

Kelly admitted that he and a friend climbed on to the large wide railing going up the stairs of the Capitol. Soon thereafter, Kelly claimed that a male wearing some type of military outfit handed him a flag and told him to go in the Capitol and not to break anything. As he entered the Capitol, Kelly stated that he observed approximately thirty Capitol Police officers allegedly standing near the door he entered, not doing anything to prevent the crowd from going inside. Kelly and a female friend then entered the doors of the Capitol with others from the crowd. Kelly recalled that he was amazed to be in the Capitol and thereafter he climbed on a statue so that his friend could take a photo of him.

Kelly admitted that he took many photos in the Capitol building and of other rioters inside and outside the Capitol. Kelly further admitted that he was in the building for approximately 15 minutes and claimed that he did not participate in any violence against law enforcement officers. After he exited the Capitol, Kelly called a friend so that they could meet near the outside of the

building. Kelly admitted that he posted video live on Facebook from 15th Street N.W. and Constitution Avenue and had approximately four thousand viewers. Kelly admitted to doing an on-camera interview with another person regarding what he and others did inside the Capitol that day.

**The Criminal Proceedings Against Kelly in the Northern District of Indiana.**

On June 26, 2017, Kelly pleaded guilty in the Indiana drug-trafficking case to conspiracy to possess with intent to distribute and distribution of cocaine and marijuana. *United States v. Anton James et al.*, N.D. Ind. 2:15-cr-00072. ECF 852. Sentencing was repeatedly continued. On October 26, 2020, a magistrate judge expanded the conditions of Kelly's bond and allowed him to travel to Los Angeles from October 30 to November 6. ECF2794. On December 30, 2020, a magistrate judge modified the conditions of Kelly's release conditions again and allowed him to travel to Dallas, Texas on January 2, 2021. ECF 2834. On January 4, 2021, the court granted Kelly's motion to postpone sentencing until February 11, 2021. ECF 2835.

Kelly traveled to the District of Columbia on January 5 in violation of the conditions of his release. He was arrested on January 14, 2012. The district court revoked his bond on that and ordered him detained. ECF 2844 and 2845. On February 16, 2021, Chief Judge Philip Simon, sentenced Kelly to 48 months' incarceration and three years' supervised release. ECF 2875.

*The Charges and Plea Agreement*

On or about January 15, 2021, Kelly was charged by complaint with violating 18 U.S.C. 1752 (a)(1) and (2) and 40 U.S.C. § 5104(e)(2)(A) and (G). On November 10, 2022, he will plead guilty to Count One of the Information, charging him with a violation of 40 U.S.C. § § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in the Capitol Building. By this plea agreement, Kelly has also agreed to pay $500 in restitution to the Department of the Treasury.

### III.     Statutory Penalties

The defendant now faces a sentencing on a single count of 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement, the defendant faces up to six months of imprisonment and a fine of up to $5,000. As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.     Sentencing Factors Under 18 U.S.C. § 3553(a)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). Some of the factors this Court must consider include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). In this case, as described below, all of the Section 3553(a) factors weigh in favor of incarceration and a consecutive sentence for this defendant.

#### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol, on January 6, 2021, is a criminal offense unparalleled in American history. It represented a grave threat to our democratic norms; indeed, it was the one of the only times in our history when the building was literally occupied by hostile participants. By its very nature, the attack defies comparison to other events.

While each defendant should be sentenced based on their individual conduct, as we now discuss, this Court should note that each individual person who entered the Capitol on January 6, did so under the most extreme of circumstances. As a person entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the

19

throes of a mob. Depending on the timing and location of their approach, they also may have observed extensive fighting with law enforcement and likely would have smelled chemical irritants in the air. Make no mistake, no rioter was a mere tourist that day.

Additionally, while looking at the defendant's individual conduct, this Court, in determining a fair and just sentence, should look to a number of critical factors, to include: (1) whether, when, how the defendant entered the Capitol building; (2) whether the defendant engaged in any violence or incited violence; (3) whether the defendant engaged in any acts of destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored, law enforcement; and (9) whether the defendant otherwise exhibited evidence of remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each individual defendant on a spectrum as to their fair and just punishment.

Simply stated, once Kelly was at the Capitol, he was not merely an actor who hung back and followed others into the Capitol. He was an instigator who willfully stood on a statue (United States property) inside the Capitol. His actions, as part of a mob on January 6, encouraged others to follow suit. These are not the actions of somebody who is simply going along with others, these are the actions of an adult who knowingly participated and encouraged others to commit criminal offenses at the Capitol. This weighs in favor of a term of incarceration.

More broadly, Kelly's statements on social media after the attack similarly demonstrate a lack of remorse. Kelly stated that, "[w]e feel like our voices weren't being heard which is why we ran through that Capitol Building. To let them know this is our house, and we were united,

black brown, red, yellow, didn't matter . . . white, everybody stood together, we ran through the building, and let them know this is our house, this is our country, and that's our President. And we are not going to let them fuck with us, man, fuck with our liberty and our freedoms, we're going to keep doing what we are doing." Kelly and the others who first breached the U.S. Capitol bear a special responsibility for this unparalleled crime because they emboldened the rioters who came behind them and were therefore each vitally important and thus responsible for the large crowd that overwhelmed the police officers through both violence and also sheer numbers.

Accordingly, the nature and the circumstances of this offense establish the clear need for a consecutive sentence of incarceration in this matter.

### B.  Kelly's History and Characteristics

Kelly has a lengthy criminal history with numerous criminal convictions and incarcerations as outlined in his PSR from the U.S. Probation Office from the Northern District of Indiana which has been previously submitted to this Court. By way of background, regarding his Indiana federal court matter, on June 26, 2017, Kelly pled guilty to one count of a nine-count Third Superseding Indictment. Count 2 charged Conspiracy to Possess with Intent to Distribute 5 KG or More of Cocaine and 100 KG or More of Marijuana; however, Kelly plead guilty to the lesser included offense of Conspiracy to Possess with Intent to Distribute 500 grams or More of Cocaine and 100 KG or More of Marijuana, in violation of 21 U.S.C. § 846. Moreover, under U.S.S.G. §2D1.1(b)(1), Kelly admitted that he possessed a firearm in connection with his offense of conviction. Additionally, under §U.S.S.G. § 2D1.1(c), Kelly admitted that he was responsible for at least 3.5 kilograms but less than 5 kilograms of cocaine as relevant conduct. *See* Indiana PSR at 4.

While Kelly was on pre-sentence release status for the Indiana matter, he traveled to

Washington, D.C. in violation of his release conditions. On January 6 and participated in the criminal conduct outline herein. Subsequently, United States District Court Judge Philip Peter Simon sentenced Kelly, *inter alia*, to 48 months' incarceration for which Kelly is currently serving. It is without question that the defendant violated the terms of his pre-sentence release conditions and Judge Simon's release Orders. Accordingly, for those reasons the government requests a consecutive sentence for Kelly's criminal offense and conduct in this case.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds, and all that it involved, was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[2] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration.

Kelly's criminal conduct, entering and standing on government property, shows extreme disrespect for the law. The rule of law was not only disrespected; it was under attack that day. A lesser sentence would suggest to the public, in general, and other rioters, specifically, that an attack on the Capitol is not taken seriously. In this way, a lesser sentence could encourage further abuses. *See Gall*, 552 U.S. at 54 (it is a "legitimate concern that a lenient sentence for a serious offense threatens to promote disrespect for the law").

---

[2] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021) (hereinafter "FBI Director Wray's Statement"), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20Testimony.pdf

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President.

The gravity of these offenses demands deterrence. *See United States v. Mariposa Castro*, 1:21-cr-00299 (RBW), Tr. 2/23/2022 at 41-42 ("But the concern I have is what message did you send to others? Because unfortunately there are a lot of people out here who have the same mindset that existed on January 6th that caused those events to occur. And if people start to get the impression that you can do what happened on January 6th, you can associate yourself with that behavior and that there's no real consequence, then people will say why not do it again."). This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to

convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs in favor of a term of incarceration. Kelly's criminal history, current sentence of incarceration, and his actions that day were sufficiently serious that they raise doubts about his willingness to follow the law in the future or this Court's judge's Orders. A sentence of consecutive incarceration will send an appropriate message that Kelly must  never repeat this conduct.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[3] This Court must sentence Kelly based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Kelly will plead guilty to Count One of the pending Information, charging the defendant with Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants

---

[3] Attached to this sentencing memorandum is a table providing additional information about the sentences imposed on other Capitol breach defendants. That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Section 3553(a)(6) does not limit the sentencing court's broad discretion under 18 U.S.C. § 3553(a) "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Although unwarranted disparities may "result when the court relies on things like alienage, race, and sex to differentiate sentence terms," a sentencing disparity between defendants whose differences arise from "legitimate considerations" such as a "difference[] in types of charges" is not unwarranted. *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020).

"Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006). "[A] defendant cannot rely upon § 3553(a)(6) to seek a reduced sentence designed to lessen disparity between co-defendants' sentences." Consequently, Section 3553(a)(6) neither prohibits nor requires a sentencing court "to consider sentencing disparity among codefendants." *Id.* Plainly, if Section 3553(a)(6) is not intended to establish sentencing uniformity among codefendants, it cannot require uniformity among all Capitol siege defendants charged with petty offenses, as they share fewer similarities in their offense conduct than codefendants do. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Tr. at 48-49 ("With regard to the need to avoid sentence disparity, I find that this is a factor, although I have found in the past and I find here that the crimes that occurred on January 6 are so unusual and unprecedented that it is very difficult to find a proper basis for disparity.") (statement of Judge Chutkan)

Cases involving convictions only for Class B misdemeanors (petty offenses) are not subject to the Sentencing Guidelines, so the Section 3553(a) factors take on greater prominence in those cases. Sentencing judges and parties have tended to rely on other Capitol siege petty offense cases as the closest "comparators" when assessing unwarranted disparity. But nothing in Section 3553(a)(6) requires a court to mechanically conform a sentence to those imposed in previous cases, even those involving similar criminal conduct and defendant's records. After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095. It follows that a sentencing court in a Capitol siege petty offense case is not constrained by sentences previously imposed in other such cases. *See United States v. Stotts*, D.D.C. 21-cr-272 (TJK), Nov. 9, 2021 Sent. Hrg. Tr. at 33-34 ("I certainly have studied closely, to say the least, the sentencings that have been handed out by my colleagues. And as your attorney has pointed out, you know, maybe, perhaps not surprisingly, judges have taken different approaches to folks that are roughly in your shoes.") (statement of Judge Kelly).

Additionally, logic dictates that whether a sentence creates a disparity that is unwarranted is largely a function of the degree of the disparity. Differences in sentences measured in a few months are less likely to cause an unwarranted disparity than differences measured in years. For that reason, a permissible sentence imposed for a petty offense is unlikely to cause an unwarranted disparity given the narrow range of permissible sentences. The statutory range of for a petty offense is zero to six months. Given that narrow range, a sentence of six months, at the top of the statutory range, will not create an unwarranted disparity with a sentence of probation only, at the bottom. *See United States v. Sorvisto*, D.D.C. 21-cr-320 (ABJ), Dec. 15, 2021 Sent. Hrg. Tr.  at 23-24 ("The government is trying to ensure that the sentences reflect where the defendant falls on the spectrum of individuals arrested in connection with this offense. And that's largely been accomplished already by offering a misdemeanor plea, which reduces your exposure substantially.") (statement of Judge Berman Jackson); *United States v. Dresch*, D.D.C. 21-cr-71 (ABJ), Aug. 4, 2021 Sent. Hrg. Tr. at 34 ("Ensuring that the sentence fairly reflects where this individual defendant falls on the spectrum of individuals arrested in connection with the offense has largely been accomplished by the offer of the misdemeanor plea because it reduces his exposure substantially and appropriately.") (statement of Judge Berman Jackson); *United States v. Peterson*, D.D.C. 21-cr-309, Sent. Hrg. Tr. at 26 (statement of Judge Berman Jackson) (similar).

In *United States v. Thomas Baryani*, 21-cr-00062 (JEB), the defendant pleaded guilty to a violation of 18 U.S.C. § 1751(a)(1), a first-degree misdemeanor. Baryani engaged in a number of the same or similar aggravated factors on January 6 as Kelly did. Like Kelly, Baranyi entered the Capitol building through sounding alarms at the Senate Wing Door; moved to the Crypt and joined other rioters as they violently pushed past a police line trying to stop the advance of rioters; passed through teargas to move throughout the Capitol building; made his way to the door of the House

of Representatives Chamber, and when he and other rioters could not enter, moved with the mob through hallways to the Speaker's Lobby and watched from close proximity as other rioters smashed open windows over the shoulders of officers trying to guard the House Chamber against attack; was standing within feet of Ashli Babbitt when she was fatally shot by an officer of the United States Capitol Police Department as she tried to climb through a broken window and into the occupied House Chamber.  Like Kelly, Baranyi left the Capitol building and gave statements calling for the overthrow of the Government, saying "this is not a Government we can allow to stay, take it down" and "this is beyond talk!  It's not talk anymore!;" and in text messages sent days after January 6, 2021, Mr. Baranyi remained defiant about his conduct on January 6, 2021 and made plans to return to Washington D.C. to protest the Presidential transfer of power. The government recommended a prison sentence of four months incarceration. This Court sentenced Baryani to 90 days' incarceration.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

V.      **Conclusion**

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to six months' incarceration to be served consecutively to any sentence Kelly is serving at this time, 60 hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:      */s/ Emory V. Cole*
Emory V. Cole
PA. Bar #49136
Assistant United States Attorney
United States Attorney's Office for D.C.
601 D Street, N.W.
Washington, D.C. 20530
E-mail: Emory.Cole@usdoj.gov
Telephone: (202) 252-7692

### CERTIFICATE OF SERVICE

On this 8th day of November 2022, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.


*/s/ Emory V. Cole*
Emory V. Cole
Assistant United States Attorney