**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| **vs.** | * | **Case No. 1:21-mj-00067 (RMM)** |
| | * | |
| KASH KELLY, | * | |
| **Defendant** | * | |
| | * | |

**ooOoo**

## KASH KELLY'S MEMORANDUM IN AID OF SENTENCING

Kash Kelly, through undersigned counsel, respectfully requests that the Court impose a sentence of probation in the instant case, which involves his plea of guilty to Parading, Demonstrating, or Picketing in the Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G), a "petty offense," which carries a statutory maximum sentence of 6-months imprisonment. Mr. Kelly traveled to Washington on January 6, 2021, to attend the political rally sponsored by then-President Trump and his political supporters. While inside the Capitol for 7 minutes, Mr. Kelly did not destroy property, did not assault or injure anyone and did not battle law enforcement. He has already been substantially punished for his conduct, as it was taken into consideration at his then-pending sentencing in federal court in Indiana. As noted in the letters from friends and family, he is a young man who has overcome much and has much to offer to his children and society. He has sincerely accepted responsibility for his part in the chaos that erupted at the United States Capitol on January 6, is remorseful and is not an "election denier." A sentence of probation takes into account the 3553(a) factors, avoids unwarranted disparity, and is "sufficient, but not greater than necessary" to comply with all the purposes of sentencing.

## I.      A Sentence of Probation is Sufficient But Not Greater than Necessary

Congress has mandated that the Court impose the shortest term of imprisonment necessary

to accomplish the purposes of sentencing.

> Section 3553(a) of Title 18 specifies the factors courts are to consider
> in imposing a sentence.  The list of factors is preceded by what is
> known as the parsimony principle, a broad command that instructs
> courts to "impose a sentence sufficient, but not greater than necessary,
> to comply with" the four identified purposes of sentencing:  just
> punishment, deterrence, protection of the public, and
> rehabilitation.

*Dean v. United States*, 137 S.Ct. 1170, 1175 (2017) (internal citations omitted).  A sentence that is

"greater than necessary" is substantively unreasonable. *Holguin-Hernandez v. United States*, 140

S.Ct. 762, 766-67 (2020).  In determining the particular sentence to impose, the Court must

consider: (a) the nature and circumstances of the offense; (b) the history and characteristics of the

defendant, (c) the kinds of sentences available and (d) the need to avoid unwarranted sentence

disparities among defendants.  18 U.S.C. § 3553(a)(1)-(6).  In this particular case, the federal

sentencing guidelines do not apply because Mr. Kelly stands convicted of a petty offense.[1] *See*

U.S.S.G. § 1B1.9 ("sentencing guidelines do not apply to any count of conviction that is a Class Bor

C misdemeanor or an infraction").  Under all the facts and circumstances, a sentence of probation

meets all the § 3553(a) factors while the the sentence recommended by the government – a

consecutive sentence of 60 days imprisonment – is greater than necessary and does not comply with

§ 3553(a).

---

[1]    The "term *petty offense* means a Class B misdemeanor, a Class C misdemeanor, or an infraction. . ." 18  U.S.C. § 19.  An offense for which "the maximum term of imprisonment authorized is . . . six months or less but more than thirty days [is] a Class B misdemeanor."  18 U.S.C. § 3559(a)(7).

### A.      Mr. Kelly's History and Characteristics

Mr. Kelly who will be 34 years old on November 11 has overcome a very difficult childhood

to become a good father and productive member or society.  Notwithstanding the government's

characterization, the district judge who sentenced Mr. Kelly in 2021 described his criminal history

as   "modest." In that case for which Mr. Kelly is currently serving a sentence of 48-months

imprisonment, he provided substantial assistance to the United States in a very serious offense.  As

to each of these § 3553(a) factors, the district court in the Indiana case made findings after a full and

fair review of all the facts and circumstances.  Those findings are set out below.[2]

#### 1.      Personal Circumstances

[Mr. Kelly's] dad was murdered when he was three years old.  He
was raised in a very, very tough neighborhood under very difficult
circumstances. His mother -- I hate talking disparagingly about
parents, but it doesn't seem like his mom did right by him in the sense
of she's a serious drug addict and has serious personal problems.  She
married some fella who became the defendant's stepdad who was, if
you believe the presentence report, and I do, was very abusive and
treated the defendant in just an awful, awful way, as the defendant
alluded to here today. He and his siblings were left abandoned much
of the time.  He watched his grandfather get run over by a car; saw his
grandmother OD. Saw lots of gang shootings in the neighborhood.
And so to call this turbulent is an understatement. But, on the other
hand, sadly, it's fairly typical of what I have seen in this area and in
these cases. The defendant has a serious substance -- or did have a
serious substance abuse problem as well. This is all reflected in
paragraphs 78 through 82 of the presentence report.

The defendant appears to have made efforts to be employed along the
way. I know he had this job at ABC Cellular that he referenced and
some other employment in an effort to make ends meet.

Sent' Hrg Tr. at 71-73

---

[2]  Sentencing Hearing, 2/11/21, *United States v. Kelly*, No. 15-CR-72 (ND Indiana) (ECF 2891)

### 2.      Criminal History

Your criminal history is -- you know, it's modest. I think it's overstated, frankly. The criminal history III is overstated, candidly. It's by virtue of two juvenile adjudications that were joined together. They were adjudicated at the same time, but you got points for these separate incidents when you're 16 years old.

I think it's fundamentally unfair that the guidelines even point juvenile adjudications into criminal history. I just don't think that's the way it should work.  You do have one conviction of – I hate to say not particularly serious – of a felony offense of a handgun, no permit, dealing with some incident in a laundromat.

[I]t's also true to say that according to the presentence report there's no criminal contacts from 2009 . . . all the way until he was arrested in this case.

*Id.*  at 70, 73.

### 3.      Cooperation and Effect of January 6 Conduct on Indiana Sentence

The prosecutor first explained (emphasis added):

I will tell you that he was my witness and he was my cooperator.  He, from the start, was extremely pleasant to deal with. He is articulate. He is smart. I believe he can do good in this world, *and I really, really wish that he didn't get wrapped up in what he got wrapped up in Washington. Today would have been a much, much easier date*. I don't want to argue with him or with you about how it was. I wish it didn't happen. Our jobs would be a lot easier. It was extremely poor judgment, in my opinion.

The district court then stated:

Then we need to talk about his cooperation. You know, the defendant -- people cooperate. That's dangerous business. I have said this a million times. This isn't some child's play here. When people cooperate against the Latin Kings and other gangs, there's real consequences to that and that's why I think they need to be richly rewarded for doing that because they do it at great risk to themselves and to their families. And from the proffer from the government, it does appear that the

defendant has been fully cooperative from the beginning and that he stood ready to testify against a very challenging defendant who did some – was convicted of doing some just heinous, heinous acts in the murder of two elderly gentlemen. This defendant stood ready to testify. For whatever reason, the government made a strategic decision to not call him. I'm not at all second-guessing that, but I do certainly think that the defendant is entitled to significant consideration for that. And certainly his early cooperation in the case spurred on the pleas of many other people. So those are all things that I have certainly taken into account and I will take into account. I can't announce the sentence without talking about what happened recently. You don't like to hear it, Mr. Kelly, but I just find it as such an affront to the democratic process; and maybe you just see it differently. We had an election – this isn't a political comment at all.

*Id*. at 56, 73.

### 4.     Mr. Kelly's Positive Contributions to Society

Now, I think equally important, perhaps even more important, are 3553 factors prior to the Washington matter, what he did while out on bond prior to Washington. Mr. Kelly had a large -- or has a large social media following. He had been involved in, you know, religious stuff before; and at some point in time, Task Force Officer Gootee called to my attention a Facebook live video. And I believe this is the same one that had been referenced, perhaps, by Mr. Russo. There was a Facebook live video, and this is all during the rioting over George Floyd and the violence towards police, burning of our cities, an extremely volatile time.

And my attention was called to a Facebook live video. Mr. Kelly is sitting in a car. He has a white undershirt on, and he goes on Facebook live. And I don't know if the Court or defense has had a chance to see it. I know Mr. Kelly has, of course, and knows which one I'm referring to. And it was extremely compelling. A number of agents and I watched it, and the message was fantastic. And both the defendant and Mr. Russo has talked about the message.

It was one of nonviolence, stop gang violence, stop gun violence; do not be violent towards the police; there's a way to protest peacefully; the police are not our enemy even if they are sometimes the ones that act in a manner that is unjustified; the police are not our enemy and stop violence towards them.

So, in addition, he said things against the "stop the snitching movement."  As you know, there's a lot of pressure out there in certain neighborhoods not to cooperate with the police. So there's a stop the snitching movement where people put on websites and social media the names of people who cooperated; and, certainly, those people, I'm sure at least some of them, have been the subject of violence and the victims of violence. And there's intense pressure, as you know, not to cooperate, and people are scared to cooperate. And people are scared of violence, and they somehow think that they are doing something wrong or immoral.

And Mr. Kelly has, as he mentioned, talked about the "see something, say something," or whatever the movements on the other side are. Mr. Kelly came out in a way that would be difficult for a police officer to say or it wouldn't resonate if an officer said it, wouldn't resonate when a politician said it. But Mr. Kelly, who grew up in that environment and was a gang member, saying, "You need to cooperate with the police when you know something" and, you know, saying things such as "Black lives need to matter even when it's not a police officer shooting someone" – and I'm not trying to be political here or take stances, but he was saying commonsensical things; that if someone is shot in your neighborhood and you're a witness, you're not helping the victim, you're not helping the victim's family, you're not helping society by not cooperating with the police; and if you believe that black lives matter, then you should be helping solve murders in your neighborhood.

Without being political, that is a commonsensical thing, and preaching against gun violence and against gang membership is an inherent good that I think we could all believe in across all sides of the political spectrum.

So I believe – seeing these videos, I believe – I know Mr. Kelly has a large number of followers, tons and tons and tons of comments, some people got on board early with religious stuff, some people who got on board later.  I believe Mr. Kelly wants to and can and could and did make some difference. And I believe, at least at that period of time, he was a voice of reason during an extremely volatile time. So I think there's a lot of good that he has done, and I think that that should be considered in the 3553.

I don't think I need to bang the drum on how seriously – or bang the drum anymore, if you will, on how seriously I see the actions in

6

Washington. . . . and he has already lost the points for acceptance of responsibility.

*Id.* at 53-55 (Statement by Indiana AUSA).

**5.      Letters from Friends and Families In Support**

The three attached letters from Mr. Kelly's fiancé, a friend, and another person who has been influenced positively by Mr. Kelly speak to all his good characteristic and his support of his children, which the Court should consider in setting the sentence.

**B.      Nature and Circumstances of the Offense**

Mr. Kelly is charged with a petty offense. During the seven minutes that Mr. Kelly was within the US Capitol on January 6, he did not destroy any property, did not assault or injure anyone, and did not battle police.[3] While inside and around the Capitol, Mr. Kelly waived an American flag, took photographs of himself on some statutes and broadcast and made political statements.

He has already been substantially punished for his conduct on January 6 because at his then-pending sentencing, the district court denied acceptance of responsibility and made clear his displeasure with Mr. Kelly's conduct at the Capitol. In addition, due to his detention in DC pending resolution of the instant case, he has lost the opportunity to reduce his sentence under the First Step Act, which allows for increased "earned time" credit under 18 U.S.C. § 3624(g), in excess of the 54-days per year authorized by 18 U.S.C. § 3624(b).

---

[3]  Gov Sent'g Memo (ECF 33) at 13 ("Kelly spent nearly seven minutes inside of the Capitol").

**C.    Just Punishment, Deterrence, and the Need to Avoid Unwanted Sentencing Disparities**

Mr. Kelly's request for a term of probation acknowledges the need to promote respect for the law and provide just punishment as well as the fact that the offense is designated a petty offense under the United States Code. It reflects that Mr. Kelly did not engage in any violent conduct or destruction of property. It reflects the short time – 7 minutes – that he was within the Capitol and the fact that upon his arrest, he voluntarily agreed to be interviewed by the FBI.[4] It reflects that he has been substantially punished for his conduct on January 6 as it was considered by the district court in his then-pending federal case, costing him a 3-level reduction for acceptance of responsibility. Quite likely, but for his conduct on January 6, he would not have been sentenced to any imprisonment.

Furthermore, a sentence of probation is in line with the sentence imposed on other defendants who have been charged in the January 6 cases. For example, in *United States v. Danielle Doyle*, 1:21-CR-324 (TNM), the court imposed a sentence of 2 months' probation. Ms. Doyle was within the Capitol for about 20-25 minutes, much longer than Mr. Kelly. However, Mr. Kelly is less culpable than Mrs. Doyle because he did not climb through a broken window like Mrs. Doyle did to enter the Capitol. This case is more similar to *United States v. Eliel Rosa*, 1:21-CR-068 (TNM) where the court imposed a sentence of 12 months' probation. In that case, the defendant accepted responsibility early on, did not pre-plan or coordinate his activities, did not go far into the Capitol building, and left when asked to do so by law enforcement.

A number of cases reflect that imposing a term of imprisonment on Mr. Kelly would result

---

[4] Gov Sent' Memo at 17.

in unwarranted sentencing disparity in violation of 18 U.S.C. § 3553(a)(6) because Mr. Kelly's

conduct and clear remorse contrasts with the more lenient sentences imposed in those cases. For

example, the Court in *United States v. Jonathan Sanders*, 1-21-CR-384 (CJN), Judge Nichols

imposed 36 months' probation for a defendant who although he had no criminal history, showed a

lack of remorse to the FBI during a recorded interview. In that case, the government recommended

that the defendant serve two of those months on home detention, however the court imposed 60

hours of community service instead. Similarly, in *United States v. Jordan Stotts*, 21-CR-272 (TJK),

the court imposed 24 months' probation for a defendant who shouted at MPD officers and posted

comments following January 6 suggesting he may not have been remorseful for his actions. In a non-

January 6 case, Judge Cooper imposed 12-month terms of probation in cases where several

defendants took turns shouting during a Supreme Court argument with the intent to disrupt the

proceedings. *See, e.g., United States v. Bronstein,* No. 15-cr-00048-CRC.[5]

Similarly, in *United States v. Bustle*, No. 21-cr-00238-TFH, Judge Hogan imposed a term

of 24-months' probation notwithstanding Ms. Bustle's social media postings:

> Before traveling to the Capitol, [Ms. Bustle] posted a message that
> read, in part, "We don't win this thing sitting on the sidelines. Excited
> to stand for truth with my fellow patriots and freedom fighters in D.C.
> today." During or after the riot, she posted a message that read, in
> part, "Pence is a traitor. We stormed the capital [sic]. An unarmed
> peaceful woman down the hall from us was shot in the neck by cops.
> It's insane here." In another message, apparently written after the riot,
> she wrote "We need a Revolution! We can accept an honest and fair
> election but this is NOT fair and patriots don't want to see their
> country brought into communism and destroyed over a lie."

*Bustle* Statement of Offense (ECF 25) at 4; Judgment (ECF 42).

---

[5] Those cases were affirmed by the D.C. Circuit against constitutional challenges. *See United States v. Bronstein,* 849 F.3d 1101, 1107(D.C. Cir. 2017).

Moreover, with respect to general deterrence, being prosecuted and being subject to a sentence of probation is a substantial consequence that befits Mr.  Kelly's conduct without unduly punishing him for the conduct of others, especially in the context of the First Amendment activities that gave origin to these events. *See, e.g., Gall v. United States,* 552 U.S. 38, 48 (2007) ("We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty.")

A sentence of probation takes into account Mr.  Kelly's history and characteristics in overcoming his extremely difficult childhood and his recent contributions to society, including his support of his family responsibilities as set out in the letters of support.

Finally, it takes into account penological interests.  It makes no sense to extend Mr. Kelly's sentence for an additional two months beyond the substantial sentence he is serving for the more serious Indiana offense.

**CONCLUSION**

For all the reasons set out above, Mr.  Kelly respectfully requests that the Court impose a sentence of probation.  This is a reasonable sentence which is "sufficient but not greater than necessary" and imposes just punishment and deters.

Respectfully submitted,

/s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**
7166 Mink Hollow Rd
Highland, MD 20777
240-472-3391
chernan7@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that the instant Memo was served this 9th day of November, 2022 via ECF.

/s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**